# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JULIA F. LAUER,

        Plaintiff,

v.                                     Civil Action 2:18-cv-343
                                        Chief Judge Edmund A. Sargus, Jr.
                                        Magistrate Judge Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Julia F. Lauer, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

### A. Prior Proceedings

Plaintiff filed an application for Disability Insurance Benefits on January 5, 2015, alleging disability beginning on July 1, 2014. (Doc. 8, Tr. 167–73, PAGEID #: 216–22). Her application was denied initially (*Id.*, Tr. 85–94, PAGEID #: 134–143), and again on reconsideration (*Id.*, Tr. 95–106, PAGEID #: 144–155). After a hearing, Administrative Law Judge (the "ALJ") issued an unfavorable decision. (*Id.*, Tr. 14–34, PAGEID #: 63–83). The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision for purposes of judicial review. (*Id.*, Tr. 3–8, PAGEID #: 52–57).

Plaintiff filed this action on April 16, 2018 (Doc. 1), and the Commissioner filed the

administrative record on June 25, 2018 (Doc. 8). Plaintiff filed a Statement of Specific Errors (Doc. 11), the Commissioner responded (Doc. 12), and no reply was filed.

**B.     Relevant Testimony at the Administrative Hearing**

Plaintiff was 39-years-old at the time of the administrative hearing. (Doc. 8, Tr. 40, PAGEID #: 89). She testified that she is married and has a seven-year-old son with her husband. (*Id.*, Tr. 42, PAGEID #: 91). Plaintiff stated that she and her family live in a single-story ranch. (*Id.*, Tr. 43, PAGEID #: 92). She testified that she is on "temporary total disability" and receives $11,000 in worker's compensation per year. (*Id.*, Tr. 43, PAGEID #: 92)

Plaintiff indicated that she has a driver's license, but only drives in limited situations: to get to doctor's appointments, to court hearings, or to take her son to school. (*Id.*, Tr. 43–44, PAGEID #: 92–93). She occasionally goes to the grocery store, but usually makes her husband go because she cannot lift heavier items. (*Id.*, Tr. 44, PAGEID #: 93).

Plaintiff testified regarding her educational background and work history. (*Id.*, Tr. 44–52, PAGEID #: 93–101). She stated that she has an Associate's Degree in Veterinary Technology and has worked in a variety of positions, including as a service advisor at various automotive businesses, a waitress, a cook, a cashier, a customer service representative, an administrative assistant, a packer, and a newspaper delivery person. (*Id.*).

Plaintiff explained why she stopped working on July 1, 2014. (*Id.*, Tr. 53, PAGEID #: 102). Plaintiff testified that, as a result of chronic back pain and a failed back surgery, she struggled to walk and perform other basic work duties. (*Id.*). She stated that she went to the emergency room around that time and that the doctors there informed her that her impairments were sufficiently severe that she could apply for worker's compensation. (*Id.*).

Plaintiff then discussed her continuing inability to work. (*Id.*, Tr. 53–54, PAGEID #: 102–03). She testified that she is "unable to stand and sit for too long a period of time" and that she experiences excruciating back pain as a result of an eight-hour work day. (*Id.*, Tr. 54, PAGEID #: 103). Plaintiff stated that she is unable to walk or function when she experiences that

pain. (*Id.*).

The ALJ requested that Plaintiff describe her pain. (*Id.*). Plaintiff testified that she experiences a sharp back pain that runs down to her tail bone and, on one side where the nerve is pinched, all the way down to her feet. (*Id.*). She also reported that she experiences stabbing pains in her feet and sharp pains down her legs. (*Id.*). Plaintiff testified that exerting herself too much caused all of those pains to "flare up" and then she cannot move or walk. (*Id.*). She further testified that she experiences pain in both of her shoulders and that her right arm "constantly goes numb." (*Id.*, Tr. 54–55, PAGEID #: 103–04). According to Plaintiff, the pain is "constant." (*Id.*, Tr. 55, PAGEID #: 104).

To treat her pain, Plaintiff testified that she got massages and went to the chiropractor every week or two. (*Id.*). She stated that these treatments help her function "as best [she] can," but do not make the pain go away. (*Id.*). Plaintiff further testified that she takes "Norco which does help a little bit" because it "dulls" her pain. (*Id.*, Tr. 57, PAGEID #: 106). She indicated that she also takes a muscle relaxer every eight hours and takes Ambien to help her sleep. (*Id.*, Tr. 57–58, PAGEID #: 106–07). Plaintiff testified that she uses a TENS unit and a brace to help her walk. (*Id.*, Tr. 62, PAGEID #: 111).

The ALJ then asked Plaintiff to explain what causes her the most pain. (*Id.*, Tr. 56, PAGEID #: 105). Plaintiff responded, "[s]trenuous activity or trying to do more than what I should." (*Id.*). She continued, testifying that examples of strenuous activity include sweeping the floor, doing the laundry, and cooking. (*Id.*, Tr. 57, PAGEID #: 106).

Plaintiff also testified that she suffers from depression and takes Cymbalta. (*Id.*, Tr. 61, PAGEID #: 110). The ALJ asked the Plaintiff, "You're not alleging depression as part of this?" (*Id.*). In response, Plaintiff testified, "It's there. I mean, I don't know that it plays a factor into this. I think it's more the physical end of it on this." (*Id.*).

She then described her activities of daily living. (*Id.*, Tr. 63–68, PAGEID #: 112–17). Plaintiff testified that she typically gets her son ready for school in the morning, prepares him a

simple breakfast, and drives him to school. (*Id.*, Tr. 63–64, PAGEID #: 112–13). After driving him to school, she normally rests from her morning activities for about 30 minutes. (*Id.*, Tr. 64, PAGEID #: 113). Plaintiff testified that she then typically does the dishes for five to ten minutes and rests for another thirty minutes afterwards. (*Id.*, Tr. 64–65, PAGEID #: 113–14). She stated that she then cleans up around the house and then waits to pick her son up from school. (*Id.*, Tr. 66, PAGEID #: 115). Plaintiff testified that she does not go on walks and has not gone on walks "for a while." (*Id.*, Tr. 68, PAGEID #: 117).

The Vocational Expert ("VE") opined that Plaintiff was capable of performing her past work as a cook, waitress, payroll clerk, picker/packer, and one of her automotive customer service jobs. (*Id.*, Tr. 75–76, PAGEID #: 124–25). The VE concluded that Plaintiff could also perform work as an office helper, route clerk, and warehouse checker. (*Id.*, Tr. 76, PAGEID #: 125). Based on additional limitations proposed by the ALJ, the VE opined that Plaintiff could only perform her past work as a customer service representative for AOL, but that she would be able to perform additional jobs, including as an order clerk, call out operator, and charge account clerk. (*Id.*, Tr. 77–78, PAGEID #: 126–27).

### C. Relevant Medical Background

Plaintiff's argument concerns her mental impairments only, and consequently the Court examines the relevant medical evidence pertaining to the same.

On May 14, 2015, Raymond Richetta, Ph.D., completed a psychological evaluation of Plaintiff. (*Id.*, Tr. 427–32, PAGEID #: 476–81). Dr. Richetta reviewed Plaintiff's chief complaints. (*Id.*, Tr. 428, PAGEID #: 477). Plaintiff indicated that her back had improved since July because she could at least get out of a chair and walk. (*Id.*). She stated that she was feeling depressed because back surgery had failed to alleviate her pain. (*Id.*).

Plaintiff reported that she had never taken any medication for anxiety or depression and

that she had not received mental health treatment since she was 20 years old. (*Id.*, Tr. 429, PAGEID #: 478). She explained that she started feeling depressed after her back injury and the failed surgery. (*Id.*). Plaintiff stated her depression sometimes made it difficult for her to get up and often interfered with her social life because she did not want to be around other people. (*Id.*, Tr. 430, PAGEID #: 479).

Dr. Richetta conducted a mental status examination of Plaintiff. (*Id.*). He noted that she "was alert throughout the evaluation and there were no indications of a loss of awareness." (*Id.*). Plaintiff was "well oriented to time, place, and person." (*Id.*). Based on her description of her symptoms, Dr. Richetta observed that Plaintiff's depression had become more significant as her back pain increased. (*Id.*). He further found that Plaintiff's depression was exacerbated by her inability to engage in physical activities. (*Id.*).

Dr. Richetta summarized the results of his psychological testing:

> The BDI-II was administered to substantiate symptoms observed or described during the clinical interview rather than for diagnostic purposes. It should be noted that chronic pain often elevates BDI-II scores. [Plaintiff's] score of 31 would be considered a severe depression by the test's author. . . .
>
> The BBHI2 indicated very low defensiveness, suggesting she made a cry for help, exaggerated her symptoms, or felt a need to show others how distressed she is. The test protocol indicated, with an objective medical condition that is disabling, her profile is likely valid. . . . [H]er functional impairments indeed have been severe.

(*Id.*, Tr. 431, PAGEID #: 480). In conclusion, Dr. Richetta diagnosed Plaintiff with Major Depressive Disorder, Single Episode, Moderate. (*Id.*, Tr. 431–32, PAGEID #: 480–81). He found that Plaintiff's depression was "a direct and proximate consequence" of her physical impairments and recommended that she seek mental health therapy and a psychotropic medication consultation. (*Id.*, Tr. 432, PAGEID #: 481).

Over the next year, Dr. Richetta completed a series of Physician's Reports of Work Ability

5

and Mental Health Notes Summaries to assist Plaintiff in her application for workers' compensation. (*Id.*, Tr. 438–45, PAGEID #: 487–94; *id.*, Tr. 448–51, PAGEID #: 497–500; *id.*, Tr. 460–61, PAGEID #: 510–11; *id.*, Tr. 479–80, PAGEID #: 528–29; *id.*, Tr. 495–96, PAGEID #: 544–45; *id.*, Tr. 512–13, PAGEID #: 561–62; *id.*, Tr. 516–17, PAGEID #: 565–66). Generally, Dr. Richetta opined that Plaintiff experienced mild and moderate limitations in her activities of daily living; social functioning; concentration, persistence, and pace; and adaptation. (*See, e.g.*, *id.*, Tr. 440, PAGEID #: 489; *id.*, Tr. 451, PAGEID #: 500; *id.*, Tr. 461, PAGEID #: 510). He consistently found that Plaintiff was unable to return to work due to her depression, which caused irritation, fatigue, reduced motivation, and oversleeping. (*Id.*, Tr. 438–45, PAGEID #: 487–94; *id.*, Tr. 448–51, PAGEID #: 497–500; *id.*, Tr. 460–61, PAGEID #: 510–11; *id.*, Tr. 479–80, PAGEID #: 528–29; *id.*, Tr. 495–96, PAGEID #: 544–45; *id.*, Tr. 512–13, PAGEID #: 561–62; *id.*, Tr. 516–17, PAGEID #: 565–66).

### D. The ALJ's Decision

The ALJ found that Plaintiff had severe physical impairments, including disorders of the lumbar spine due to degenerative disc disease and arachnoiditis. (Doc. 8, Tr. 20, PAGEID #: 69). However, the ALJ concluded there was no evidence of any mental impairment that was severe as of the date last insured. (*Id.*, Tr. 22, PAGEID #: 71). Relevant here, she then summarized Plaintiff's history of mental health treatment:

> The claimant underwent a psychological evaluation in May of 2015 as part of a worker's compensation claim. [Dr. Richetta] diagnosed the claimant with major depressive disorder, single episode, moderate. Careful consideration of the claimant's medical records as well as her allegations in this case leads me to the conclusion that any depressive symptoms that the claimant might have experienced were not anywhere near the severity described and diagnosed by Dr. Richetta. The claimant did not allege mental impairments anywhere in her medical treatment record and did not allege any at the hearing. Further, it appears that any complaints of depression expressed by the claimant during the examination were the direct result of situational factors, specifically her initial back injury in 2011 and resulting

> back pain. Dr. Richetta stated that the depression experienced by the claimant was a "direct and proximate consequence" of the physical aspects of the claimant's condition. The claimant stated during the examination that she only had depression since the injury. Further, the claimant engaged in work activity after her work injury, specifically from July of 2012 until July 1, 2014, and accrued significant earnings. While the claimant did seek mental health treatment for depression starting in December of 2015, any marked functional limitations from this condition did not occur until <u>after</u> the DLI. Later records in May of 2016 indicate that the claimant was oriented to person, place, and time, and had appropriate mood and affect. Therefore, there is no evidence that the claimant had any mental impairment that would constitute a "severe" impairment for Social Security purposes through the date last insured.

(*Id.*). The ALJ held that there was no medical opinion of record to indicate the existence of an impairment or combination of impairments that met or equaled in severity the level of the Listings of Impairments. (*Id.*).

As for Plaintiff's RFC, the ALJ opined:

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) subject to the following additional limitations: (1) lifting or carrying can be done frequently up to 10 pounds; (2) sitting can be done up to 6 hours in an 8-hour workday, allowing a change in positions every 30-45 minutes and a few minutes to change position without leaving the workstation; (3) standing or walking can be done up to 2 hours in an 8-hour workday; (4) non-repetitive use of foot controls can be done frequently; (5) climbing of ramps or stairs can be done occasionally; (6) no climbing of ladders, ropes, or scaffolds; (7) kneeling, crouching, or crawling can be done occasionally; and (8) no exposure to hazardous machinery or unprotected heights.

(*Id.*, Tr 22, PAGEID #: 72). Based on this RFC, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a customer service representative or telephone solicitor. (*Id.*, Tr. 27, PAGEID #: 77).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff asserts a single assignment of error. According to her, the ALJ improperly considered the treating psychologist opinions authored by Dr. Richetta. (Doc. 11 at 11–14).

Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). However, "an ALJ may properly reject a treating physician's opinion that does not meet these standards." *Mixon v. Colvin*, 12 F.

Supp. 3d 1052, 1063–64 (S.D. Ohio 2013) (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529–31 (6th Cir. 1997)).

Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakley*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550–51 (6th Cir. 2010). In order to meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937.

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citation and quotation marks omitted). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

This case presents a wrinkle on a traditional treating-physician argument. Plaintiff complains that the ALJ failed to consider Dr. Richetta's opinions regarding her mental impairments, the vast majority of which are contained in records dated after Plaintiff's date last insured. (*See* Doc. 11 at 11–14). "In order to qualify for DIB, a claimant must 'establish the onset of disability prior to the expiration or his [or her] insured status.'" *Kingery v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 598, 602 (S.D. Ohio 2015) (quoting *Garner v. Heckler*, 745 F.2d 383, 390 (6th

Cir. 1984)). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) (citation omitted). "To be relevant to the disability decision, 'post-expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured.'" *Kingery*, 142 F. Supp. 3d at 602 (quoting *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003)); *see also McNier v. Comm'r of Soc. Sec.*, 166 F. Supp. 3d 904, 911 (S.D. Ohio 2016) ("Such evidence can 'only [be] considered to the extent it illuminates a claimant's health before the expiration of his or her insured status.'" (quoting *Jones v. Comm'r of Soc. Sec.*, No. 96–2173, 121 F.3d 708, 1997 WL 413641, at *1 (6th Cir. July 17, 1997))).

Plaintiff's date last insured was September 30, 2015. (Doc. 8, Tr. 20, PAGEID #: 69). As Plaintiff acknowledges, Dr. Richetta first evaluated Plaintiff to assist her with her worker's compensation claim on May 14, 2015. (Doc. 11 at 12). He did not begin treating Plaintiff for her mental impairments until December 10, 2015, (*id.*), two and a half months after her date last insured.

In this context, the ALJ properly evaluated the opinion of Dr. Richetta and discounted it. She concluded that Dr. Richetta's May 14, 2015 evaluation was inconsistent with Plaintiff's medical records and allegations. (Doc. 8, Tr. 22, PAGEID #: 71). Specifically, the ALJ emphasized that Plaintiff did not complain of any mental impairment in her medical records and did not allege the she suffered from any mental impairment at the hearing. (*Id.*). The Undersigned's independent review of the record confirms the same. Plaintiff's medical records do not appear to contain any complaints of mental impairments prior to May 14, 2015, and Plaintiff has not suggested otherwise in her filings in this case.

Further, the ALJ expressly acknowledged that the medical record demonstrated that

Plaintiff began treatment for depression in December 2015 with Dr. Richetta. (*Id.*). However, she stressed that these records indicated that "any marked functional limitations from this condition did not occur until <u>after</u> the [date last insured]." (*Id.*) (emphasis in original).

In other words, the ALJ discounted Dr. Richetta's opinions because they were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with the other substantial evidence in the case record.

Plaintiff nonetheless insists that the ALJ specifically erred when she failed to credit Dr. Richetta's opinions expressed in those post-date last insured records. But the law is clear that she was not required to do so. "[W]hen determining whether a Plaintiff is disabled, 'the ALJ generally only considers evidence from the alleged disability onset date through the date last insured.'" *Iser v. Comm'r of Soc. Sec.*, No. 2:16-cv-771, 2017 WL 2544085, at *8 (S.D. Ohio June 13, 2017), *report and recommendation adopted*, No. 2:16-cv-771, 2017 WL 2807471 (S.D. Ohio June 29, 2017) (quoting *Lowery v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 700, 716 (S.D. Ohio 2012)). Dr. Richetta's records that post-date Plaintiff's date last insured are only relevant if they "relate back to the claimant's condition prior to the expiration of her date last insured." *Kingery*, 142 F. Supp. 3d at 602 (quoting *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003)).

Plaintiff does not argue with this statement of the law. Indeed, Defendant raised this very argument in response to Plaintiff's Statement of Errors. (*See* Doc. 12 at 5–8). And Plaintiff offered no argument in reply. Having reviewed the records in question, it is clear to the Undersigned that Dr. Richetta's records after the date last insured offer snapshots of Plaintiff's mental health in late 2015 through 2016. (*See* Doc. 8, Tr. 438–45, PAGEID #: 487–94; *id.*, Tr. 448–51, PAGEID #: 497–500; *id.*, Tr. 460–61, PAGEID #: 510–11; *id.*, Tr. 479–80, PAGEID #: 528–29; *id.*, Tr. 495–96, PAGEID #: 544–45; *id.*, Tr. 512–13, PAGEID #: 561–62; *id.*, Tr. 516–17, PAGEID #: 565–

66). But these snapshots are discrete records of Plaintiff's depression at specific points in time after the date last insured. They do not relate back to Plaintiff's health prior to her date last insured. Because those records offer no insight regarding Plaintiff's depression prior to her date last insured, the ALJ properly declined to consider them and discounted Dr. Richetta's opinion accordingly. *See Iser*, 2017 WL 2544085, at *8; *Kingery*, 142 F. Supp. 3d at 602.

Finally, Defendant argues that the ALJ's failure to discuss expressly the Medco-14 form, which was completed by Dr. Richetta, was harmless error. (Doc. 12 at 8). The Court agrees.

> De minimis or harmless error occurs: (1) if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) if the Commissioner has met the goal of the procedural safeguard of the good reasons rule even though an ALJ has not complied with the express terms of the regulation.

*Congrove v. Comm'r of Soc. Sec.*, No. 2:15-cv-2630, 2016 WL 3097153, at *5 (S.D. Ohio June 3, 2016), *report and recommendation adopted*, No. 2:15-cv-02630, 2016 WL 3944485 (S.D. Ohio July 15, 2016) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004))

At his initial appointment with Plaintiff, Dr. Richetta completed a psychological evaluation of Plaintiff, (*id.*, Tr. 427–32, PAGEID #: 476–81), and a Medco-14 Physician's Report of Work Ability ("Medco-14") form, (*id.*, Tr. 440–41, PAGEID #: 489–90). These records are the only two records prior to the date last insured that concern Plaintiff's mental impairments. In her decision, the ALJ specifically addressed Dr. Richetta's psychological evaluation, but failed to explicitly mention the Medco-14.

Even if this was error, it was harmless. (*Id.*, Tr. 22, PAGEID #: 71). The Medco-14 form restated the Dr. Richetta's findings from his written psychological evaluation but minimized the severity of Plaintiff's mental impairments. (*Compare id.*, Tr. 431, PAGEID #: 480 (Dr. Richetta's psychological evaluation describing Plaintiff's functional limitations as "severe") *with id.*, Tr. 440,

12

PAGEID #: 489 (Dr. Richetta's Medco-14 form describing Plaintiff's functional limitation as "moderate" and "mild")). Because the ALJ properly analyzed Dr. Richetta's opinions expressed in the psychological evaluation, and because those opinions were the same, if not more favorable to Plaintiff than those expressed in the Medco-14 form, the ALJ satisfied the goal of the procedural safeguards related to the treating physician rule.

## IV. CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## **Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.

Date: February 5, 2019                              /s/ Kimberly A. Jolson
                                                    KIMBERLY A. JOLSON
                                                    UNITED STATES MAGISTRATE JUDGE